SPEIDEL, Admr., Appellee, v HALLER, et al., Appellees, and KRAMER, et al., Appellants.

Ohio Appeals, First District, Clermont County.

No. 156. Decided October 22, 1943.

Nichols, Speidel & Nichols, Batavia, for Russell F. Speidel.
Forrest E. Ely, Batavia, for Johanna Cecelia Haller.
Paul M. Herbert, Columbus, for Laura Riker.
Marble & Vordenberg, Cincinnati, for Eva Kramer.
Harry Britton, Batavia, for Marietta Concrete Co.

## OPINION

By MATTHEWS, J.

The petition of the Administrator with the will annexed states two causes of action, one for the construction of the

will of Anna Mason Kramer, deceased, and the other for the sale of real estate to pay debts, concerning the latter of which there was no controversy.

The appeal on questions of law to this Court presents the sole question of the intent of the testatrix as expressed in her will.

The. testatrix died on November 29th, 1941, at the age of 79 years. Her will is dated January 11th, 1939. She had been married twice, but no child was born of either marriage. Her first husband was Thomas Mason and during their marriage they adopted a child, now known as Johanna Cecelia Haller. In 1928, the testatrix married George Kramer with whom she lived until her death. He died on June 14th, 1942. The testatrix had resided on the farm where she died, for 51 years. George Kramer had been employed on the farm for 27 years. The administrator has sold the farm for $15,000.00. It appears now that the personal property was sufficient to pay the debts, but the proceeds of the sale of the farm represent substantially the entire estate. The defendants are the adopted daughter and the next of kin of the testatrix, and Eva Kramer, who is the mother and sole next of kin of George Kramer, all of whom are named as beneficiaries in the will under construction.

The record shows that the testatrix was about 77 years of age when she made this will, that while she was not a highly educated person, she did possess a high degree of native ability and that she prepared this will herself without assistance. This is the entire will:

"I  Anna Mason Kramers. Last will.

I Anna Mason Kramer, being of sound and disposing mind, and under no restraint whatsoever, do make this my last will and testament.

II  I bequeth to my Husband, George Kramer, all my Estate, both Real—Personal, or Mixed and no Inventory necessary.

III  I give to Johanna Cecelia Haller $300.00 three hundred dollars without interest.

IV  I give to Eva A. Sturm, my two fur neck pieces. A Fisher Fur and a Russim Fur, To Anna A. Fisher, vase, Mrs. Mae Grassbey a vase and music Box, Laura Riker Large Lamp as was selected.

V  I appoint Hayward D. Gatch, my Executor and if he has passed away, then I appoint My, Husband George Kramer, Executor.

VI  If My, Husband George Kramer should have passed

away within a year of my death, then the Estate, all, is to go to my heirs Laura Riker, Mae Grassbey, Anna A. Fisher Eva A. Sturm Edna Messmer, Mary Fox Clifford Fox, Archie Fox, share and share alike. If any have passed away, then to go to the Estate And George Kramers Mother, Eva Kramer, $500.00 Five hundred dollars if living, out of the above.

VII I give to Fr O B Auer $200.00 hundred dollars of St. Columbanum Church Loveland O. for Masses for my self and Mr. Thos Mason as he wishes to do.

VIII If any Beneificiriy should Institute trouble or be dissatisfied, then there shall be Null and Void, and go back to the Estate, if I and Mr. Kramer should meet death at the same time, in an accident, then the Estate is to go to my heirs absolutely.

I have signed this will, this day in the year of Jan. 11, 1939.

ANNA MASON KRAMER"

On the one hand it is claimed that inasmuch as George Kramer survived the testatrix, he acquired the absolute title to this entire estate by force of the language of paragraph II, and that none of the subsequent provisions of the will operated to reduce, qualify, or impose a condition upon it. On the other hand, it is claimed that paragraph VI imposed a defeasance by his death within one year which occurred, and further that as the other dispositive provisions would be rendered entirely nugatory if George Kramer had already been given the entire estate absolutely, they also disclose the intent of the testatrix to the contrary.

We are of the opinion that the latter is the sound view and that therefore the provisions of paragraph VI became operative upon the death of George Kramer, to pass the estate therein referred to to the beneficiaries therein named which was that portion of the whole estate remaining after giving effect to the bequests given by the other provision of the will.

In reaching this conclusion, we do so by the application of the one cardinal principle that in construing a will a court should place itself in the position of the testator and, as far as humanly possible, think as he or she thought, and, if, by so doing, the intent becomes clear, that intent should be given effect and no artificial or legalistic rule, appropriate when the intent is not clear, should be allowed to defeat the clear intent. **Provident Savings Bk. & Trust Co. v Volhard, 54 Oh Ap 327, at 329, 41 O Jur 575, et seq., and 590, et seq., and 608.** We should avoid giving controlling effect to the order in

56

which the dispositive provisions are placed by the testatrix. Of course, a gift in absolute terms will not be cut down by a later provision that is vague, because it does not show an intent to do so, but where the later provision is clear and irreconcilable with the earlier one, it, rather than the earlier, will be given effect, because it is the later expression of intent. But these are not really rules, but are only circumstances of more or less weight in finding the intent, depending upon many other circumstances that may be present, any one of which may make clear the intent.

It seems clear that the testatrix did not intend by the first dispositive provision to exhaust her testamentary intent. This is manifest from the following paragraphs in which she gave to other beneficiaries, as many as six in number, property that under that construction she had already disposed of. To place this construction upon this will would attribute to the testatrix the intent and purpose of making an ineffective and quixotic proffer of gifts to the avowed objects of her bounty.

And this strange result, it is urged, is required by the language of paragraph VI which provided that:

"VI If My Husband George Kramer should have passed away within a year of my death, then the Estate, all, is to go to my heirs Laura Riker, Mae Grassbey, Anna A. Fisher Eva A. Sturm Edna Messmer, Mary Fox Clifford Fox, Archie Fox, share and share alike, If any have passed away, then to go to the Estate And George Kramers Mother, Eva Kramer, $500.00 Five hundred dollars if living, out of the Above"

It is said that it must be held that this language shows that the testatrix intended only to make provision for the death of George Kramer during the year preceding her death and the words relied on for this purpose are "Should have passed away within a year of my death, then the estate, all, is to go to my heirs" followed by the names of those to whom she referred by the designation of "heirs."

Limiting ourselves to this part of the will in our present search for testamentary intent, we find that to conclude that the testatrix referred to the year preceding her death and not to the year following her death, or both, requires that we prejudge (unassisted by any expression from her) that she fixed the future event of her death as the date for determining the tense of her verbs. On no other basis can it be said that she meant only the year preceding her death. Without that unsupported assumption, the words indicate that she

intended to include the year following her death as well. And while there was not as much reason for providing for the contingency of the death of George Kramer before her death as after, the testatrix may have wanted those named in paragraph VI to take equally in either contingency, which they would not have done in the absence of this provision in the will, had George Kramer predeceased her inasmuch as they were not of equal degree of relationship to her.

There are also other reasons which might have influenced her to provide for the death of George Kramer within the year before and the year after her death. She might have thought that she might not have testamentary capacity, or opportunity to exercise it, if possessed, should George Kramer die shortly before her death. And she might have thought, as is the fact, that it usually takes at least a year to administer an estate and, therefore, provided for the time of distribution rather than the time of her death.

So without applying any technical rules of interpretation, we think a reading of this will discloses a clear intent to deduct the bequest of $300.00 to Johanna Cecelia Haller, $200.00 to Father O. B. Auer for Masses, and bequests of specific property to Eva A. Sturm, Anna A. Fisher, Mae Grassbey and Laura Riker, and then to give what is substantially the whole estate to George Kramer, if he should be living to receive it, and should he die within the year before or after her death what he would otherwise take to the persons named in paragraph VI.

We are loathe to refer to specific rules of interpretation, lest the impression be given that our decision as to the meaning of this will is predicated upon them. We have found it unnecessary to resort to any such rule to understand the intent as expressed. However, there is no technical barrier that prevents giving effect to the testatrix's lawful intent—and we find nothing unlawful in the intent as expressed. All the rules are for the purpose of giving effect to the intention, not to defeat it. It is therefore permissible:

(1) "In order to enable the Court to uphold all provisions of a will,—to reverse the relative order of the devises and bequests, and to transpose the different provisions of the will if it be possible thereby to render them consistent." 28 R. C. L. 208.

(2) "The rule which sacrifices the former clause in a will because inconsistent with a later one is never applied except upon failure to give such construction as renders the

whole will effective and allows each provision to stand." Id.

(3) "The Court will not disturb the first provision further than is absolutely necessary to give effect to the second." Id.

(4) "For purposes of construction a will must be considered in reference to the circumstances which existed at the time of its execution." Id. at 235; 41 O Jur 595, et seq.

(5) "The word 'estate' in a will is not to be understood as a word of art, but of interpretation and its meaning may be affected by other clauses and dispositions in the will." Id. 236.

(6) "Although an estate in fee simple is devised, it may be limited by a subsequent valid provision that the estate shall go to others upon the happening of a certain contingency." Id., 241.

(7) "The word 'heirs' may be given a meaning by the testator in his will different from the dictionary meaning." Id., 247.

There are many other expressions by Courts that have been or could be stated in the form of rules of interpretation all of which, however, do not, and were never intended to, control the expressed intent of the testator. They are nothing more than the consensus of judicial opinion that testators as reasonable men must have had a particular intent by particular language, but with the universal qualification that that intent could be changed by the use of words or combination of words conveying a different meaning, and that whatever the meaning, that meaning must prevail to the extent that it is lawful.

If contrary to the correct method we approach this will with so-called rules of interpretation paramount in our minds we will reach the same conclusion as to its meaning as we have without the aid of such rules.

The judgment of the Probate Court is affirmed.

HILDEBRANT, J., concurs.

ROSS, P. J., dissents in separate memorandum.

ROSS, P. J., (dissenting).

I find myself unable to concur in the conclusion of my associates upon the interpretation of the conflicting clauses in this will.

In Clause II, the testatrix gave her entire estate to her husband. I agree that the several specific bequests later appearing must be considered as modifications of such absolute

bequests. Ample authority for giving effect to such modification exists and is noted in the majority opinion.

However, Clause VI, if construed as indicated in the majority opinion, is more than a modification. It is wholly destructive of effect of Clause II, for it changes an absolute devise into one which may be wholly defeated by a contingency happening after the death of the testatrix.

If the husband of testatrix predeceased her, by law the devise would have lapsed and Clause VI would have become operative subject to the modifications contained in other clauses in the will.

That the testatrix considered she had the right to control the effect of such lapse or limit it to a period of a year prior to her death is merely indicative of her lack of knowledge of the law applicable to lapsed devises.

The construction placed upon this clause by the majority of the Court is effected by what seems to me to be a strained construction of the simple language used. Now, of course, the testatrix could have foreclosed any ambiguity by the use of other language. She could have said:—"If my husband predeceases me;" or, she could have said: "If my husband die within one year after my death." She did not say either before or after "my death," but used the words "of my death."

Regardless of fixed rules of construction which must always give way to an expressed intent, it seems apparent to me that the testatrix when she drew the will was thinking of the circumstances which would exist at the time of her death. There can be no question that this applies to the latter part of the Clause VI where she refers to the possible decease of one or more of the devisees mentioned in Clause VI:—"If any have passed away," she says. Why say as to these she meant **before** her death and as to the husband **after** her death? It seems clear to me that the **entire** clause had reference in the mind of the testatrix to matter which would occur **prior** to her death. This Court would not have used the words adopted by the testatrix. But when she states: "If my, husband George Kramer should have passed away within a year of my death," it seems clear to me she was referring to what might occur prior to her death and not afterward. Of course, she could have modified her will to meet such a contingency, just as she could have modified it to meet the contingency of the death of one of the devisees mentioned in the latter part of Clause VI.

Compare the language in the beginning and end of the clause. "If my, husband George Kramer should have passed away"—"If any have passed away—" Why adopt one meaning in one case and another meaning in another.

60

As stated before the separate bequests occur as modifications in either construction and consequently are not helpful in reaching a conclusion.

I am fully convinced the testatrix had no thought of defeasance. She was considering only contingencies which might occur prior to her death in each case. Whether she considered her testament as a necessarily final disposition of her estate, not subject to modification by a new will or codicil, or that she merely desired it to be so is problematical.

In any event I can see no reason for imposing a construction upon her language which which to me seems strained and contrary to the intent evident from the language used.

It is my conclusion that the heirs of the husband took the estate subject to the bequests mentioned in the other items of the will.